# Franklin Moore, impleaded with others, v. Ellen L. Foote.

*Partnership dealings: Husband and wife: Frauds of husband.* A wife holding a lawful and just claim against a firm of which her husband is a member, is not precluded from recovering upon it because of any incidental wrong that may result to one of the other members of the firm in consequence of an alleged fraud of her husband to which she was in no wise a party; there is no rule of law compelling a wife to assume the consequences of her husband's frauds, or to guaranty his good conduct.

*Partnership: Due-bills: Payment: Transfer of title.* A firm having given a non-negotiable due-bill to one of its members for money borrowed of him, the delivery thereof to his wife as payment upon a debt due from him to her transfers the title and authorizes her to enforce payment, notwithstanding the amount stands credited to the husband on the books of the firm; but the due-bill being non-negotiable, a settlement of the matter with the husband by the firm without knowledge of its transfer would probably be a complete defense.

*Partnership: Dealings of individual member: Husband and wife: Creditors.* Where such due-bill has been given up to the firm and their note taken for the amount by an arrangement between the creditor and her husband, the fact that the credit still remains to the husband on the books of the firm, and the allowance thereof in his favor in a subsequent settlement of the partnership matters, cannot prejudice the claim of the wife upon the note.

*Partnership: Dealings between husband and wife: Agency: Creditors.* In a dealing between a wife who is a creditor of a firm and her husband

MOORE *v.* FOOTE.

who is a member of the debtor firm, in reference to an exchange of a due-bill held by her against the firm for a firm note, the husband is in no proper sense the wife's agent; and her rights in the matter are precisely what those of any other creditor dealing in like manner would be.

*Submitted on briefs June 21.    Decided October 4.*

Error to Superior Court of Detroit.

*Meddaugh & Driggs,* for plaintiff in error, argued that the firm due-bill in Foote's hands was at most but evidence that he had advanced to the partnership the amount thereof, and his right of recovery thereon would depend upon and be subject to an accounting between him and the firm; and his transfer of the due-bill to his wife, in payment of his antecedent indebtedness to her, would in legal effect operate only as an assignment to her of the firm indebtedness to him, and would give her no greater right as against his co-partners than he had; that in the transaction of giving Mrs. Foote the firm note in lieu of the due-bill and other notes, Foote represented all the parties to it, and was the agent of both the firm and his wife; that the law presumes him to have had knowledge of the facts that his firm was insolvent and that he was largely indebted to it, and his knowledge was under the circumstances her knowledge; that neither her rights nor her remedy therefor, as to so much of the note as represented the due-bill, was altered or affected by the giving of the note; that the essence of the transaction was nothing else than an attempt by Foote to pay his individual debt with the partnership obligation; and they cited: *Pars. on Part.,* 202, *notes c and d,* 285-6, *note r; Simrall v. O'Bannon,* 7 B. Mon., 608; 1 Pars. on Bills and Notes, 211; *Wilson v. Forder,* 20 Ohio St., 89, and cases cited.

*William Jennison,* for defendant in error, to the point that when one partner has made a firm note payable to himself for money loaned by him to the firm, the assignee

of that note may sue and recover upon it, cited: *Davis v. Brigg, 39 Me., 304; Thayer v. Buffum, 11 Metc., 398; Temple v. Leaver, 11 Cush., 314;* and that even where such note was given for the individual debt of a partner, an endorsee without notice could recover against the firm: *Chagvernes v. Edwards, 3 Pick., 5; Story on Part.,* § *133, p. 226–7; Edwards on Bills, p. 100 (Marg.); Pars. on Part., 208, 212; Haldeman v. Middleton, 28 Penn., 440; Munroe v. Cooper, 5 Pick., 412; 19 Pick., 102;* that the chief clerk had authority to give the firm due-bill: *Tillier v. Whitehead, 1 Dall., 269; Gow. on Part., 55 and note;* that the due-bill, though non-negotiable, was transferable, and the assignee could sue in her own name: *2 Comp. L.,* § *5775;* that the prior indebtedness of Foote to plaintiff made her a *bona fide* purchaser subject to equities, of which there were none here: *Bostwick v. Dodge, 1 Doug., 413; Outhwite v. Porter, 13 Mich., 533;* that it cannot be said that plaintiff took the due-bill or the note with notice that it was a payment of the private debt of Foote, for the due-bill represented the debt of the firm to Foote, which he merely transferred to plaintiff, and the payment to her was in no sense a payment with the funds of the firm: *Smith v. Lusher, 5 Cow., 688;* that the transaction between Foote and the firm, when he received the firm due-bill for the New York draft, was evidently intended as a specific temporary loan, not a payment or a contribution to the general partnership affairs; that if Mrs. Foote had sued upon the note before the dissolution of the firm, evidence of Foote's indebtedness to the firm would be incompetent on the grounds, (1) that until an accounting was had no balance in law existed, and (2) that no set-off could be allowed, even had there been a balance, for there being several defendants, the demand set off must be due to all of them jointly: *2 Comp. L.,* § *1679, Sub. 5 and 6; 14 Mich., 152, 170; Waterman on Set-off;* that even if the plaintiff could not have

sued on the due-bill, yet the surrender of it to the firm, and the giving of a new firm note with full knowledge of the transaction, and before dissolution, was a waiver by the firm of any claim against the due-bill; that Foote, being a partner, clearly had authority to give the firm note for the firm debt; that the firm having enjoyed the proceeds of every dollar included in the new note, could have waived any set-off to the due-bill, and so could one of the partners: *Pars. on Part. (Marg.),* *200–2; 12 B. Mon., 11;* that the plaintiff was therefore a *bona fide* purchaser of the note in suit on the day of its date and while the firm was in existence, and the consideration was surely valid, consisting as it did of a debt the firm had long owed her, and a debt it owed her husband and which he was willing and had the right to transfer; that the subsequent dealings between Foote and Moore, of which plaintiff had no knowledge, whereby Foote received credit for the amount of the New York draft, could not prejudice the plaintiff, whose rights had before been fixed; that when Foote delivered to plaintiff the firm note in suit, his agency in the transaction ceased, and she cannot be bound by the subsequent acts of the firm; and that it was through the negligence of the clerk, and not from any fault in Foote, that the transaction was not properly entered up in the firm books.

COOLEY, CH. J:

This case is brought to this court for review upon the following finding of facts and law:

"In the above entitled cause I find the following facts:

"1. On the 13th day of June, 1874, the defendants were partners in trade, and had been such for more than eight years prior thereto, doing a wholesale grocery business in the city of Detroit, under the name of Moore, Foote & Co.

"The plaintiff is the wife of the defendant Foote. On

the date above mentioned, the defendant Foote signed and executed in the said firm name a certain promissory note, for the sum of three thousand two hundred and thirty-six dollars and ten cents, bearing date June 13, 1874, payable on demand to the order of said Ellen L. Foote, with interest at the rate of ten per cent. per annum, after maturity.

"2. On the 6th day of December, 1870, the defendants being indebted to the plaintiff in the sum of one thousand two hundred and three dollars and three cents, gave to her their promissory note, signed in the firm name, bearing date the day and year last aforesaid, and for the last mentioned sum, payable on demand.

"The amount due on this note was reduced by successive endorsements, as follows:

| | |
|---|---:|
| January 5, 1871 | $100 00 |
| December 12, 1872 | 25 00 |
| December 20, 1872 | 145 00 |
| Total of endorsements | $270 00 |

"Leaving a balance on the note at that date, of nine hundred and thirty-three dollars and three cents. On the 2d of December, 1872, the defendants' firm executed and delivered to plaintiff its certain other promissory note, payable on demand, for two hundred and fifty-two dollars and sixty-three cents, being for interest due and unpaid on the last mentioned note.

"The two last notes remained unpaid, and were in the hands of and owned by the plaintiff of the 13th of June, 1874.

"Sometime in 1873, the defendant Foote, being the holder and owner of a draft on New York for one thousand seven hundred dollars, less exchange, being one thousand six hundred and ninety-seven dollars and four cents, loaned the same to the firm and received a non-negotiable due-bill at one day therefor, signed by the chief clerk of the defendants, in their firm name. This loan was cred-

ited to Foote upon the cash blotter of the firm. Foote was at the time indebted to his wife, the plaintiff, for money previously loaned to him by her, in an amount exceeding the amount of said draft, and transferred the due-bill to the plaintiff in part payment of his indebtedness to her.

"The defendant Moore had no knowledge of such due-bill, or of its transfer.

"3. On the said June 13th, said two last mentioned notes and the due bill being still unpaid, Foote received the same from the plaintiff, and procuring the interest to be calculated by said clerk, surrendered up to him the notes and due-bill, and himself executed a new note,—the one here in suit,—for the amount of principal and interest called for by the notes and due-bill, surrendered as just stated, and in lieu thereof, delivered the same to the plaintiff, none of the other defendants having knowledge or assenting to the transaction, and no entry thereof being made upon the books of the said firm, by said clerk or any other person.

"4. The note in suit was first presented for payment, to the receiver hereinafter mentioned, on the 12th of April, 1875. It was never paid. The interest thereon from April 12, 1875, to the present date, January 27, 1876, is two hundred and sixty-seven dollars and forty cents. The total amount of said note to date, including principal and interest, is the sum of three thousand four hundred and ninety-two dollars and twenty-eight cents.

"5. In the year 1874, and for some years prior thereto, the affairs of the firm were in great confusion, and the partnership thoroughly insolvent. A bill was filed on June 24, 1874, by defendant Moore, in this court, for a dissolution of the partnership and a winding up of its business. Francis Palms was appointed receiver. Upon a statement of the accounts of the several defendant partners, defendant Foote insisted upon, and was allowed and credited in his account with the sum of one thousand seven hundred dollars, so loaned as aforesaid by him to the firm. On the 16th of January, 1875, the defendant Moore came to an

adjustment with defendant Foote, by which Moore agreed, in consideration of receiving the assets of the firm, to assume the liabilities thereof, and gave bond to Foote to carry out such agreement, and release him from all liability on the firm debts. At the time of such adjustment and agreement, the plaintiff's claim to the said money, so loaned, did not appear upon any of the firm books or papers, nor did Moore know of the same, or that plaintiff held the note sued upon, or that it had been given; the only claim of plaintiff which did appear upon the books, or of which Moore had knowledge, was for the amount due upon said notes of December 6, 1870, and December 2, 1872. The plaintiff had no dealings directly with the firm, but only through her agent, defendant Foote.

"I find as conclusion of law, based upon the foregoing facts:

"*First,* That the defendants are indebted to the plaintiff in the total amount of principal and interest of said note, as above stated, viz.: three thousand four hundred and ninety-two dollars and twenty eight cents;

"*Second,* That the plaintiff is entitled to a judgment in this suit, against the defendants, of the sum of three thousand four hundred and ninety-two dollars and twenty-eight cents, and costs of suit to be taxed.

"February 5, 1876.

(Signed)                 LYMAN COCHRANE,
"*Judge of the Superior Court of Detroit.*"

An amended finding was afterwards filed, which, however, does not affect the questions of law to be determined.

Is this judgment correct? It is said that it is not, because it consummates a fraud, designed and perpetrated by George Foote upon his copartners, and especially upon the plaintiff in error, who has already allowed and paid to George Foote the amount of the note in suit, in full confidence that he was creditor of the firm to that amount, and with no reason to suspect the contrary. This may all be true and still the defendant in error be entitled to the judgment she

34 MICH.—57.

has recovered.    If the note is legally and equitably her property she is not precluded from recovering upon it because of any incidental wrong that the recovery may cause to another in consequence of the fraud of her husband to which she was in no wise a party.    There is no rule of law which compels her to assume the consequences of her husband's frauds.

It will probably not be disputed that when Mrs. Foote took from her husband the firm due-bill she acquired the title thereto, and might have enforced payment thereof, notwithstanding the amount stood credited to her husband on the books of the copartnership.    But as the due-bill was not negotiable, had the firm settled with George Foote without knowledge that it had been transferred, the fact would probably have constituted a complete defense to any suit on the due-bill on her behalf.

It is said the case is made no better for Mrs. Foote by the taking up of the due-bill and the giving of the note in suit, because in that transaction George Foote must be regarded as acting as agent as well for his wife as for the copartnership, and his wife must consequently be chargeable with notice of the fact, well known to him, that on the partnership books the amount still stood to the credit of her husband.    That method of charging the parties respectively with knowledge of what was known by George Foote would make the argument defeat itself; for while Mrs. Foote would be chargeable with notice of the copartnership credit, the firm on the other hand would be chargeable with notice of the giving of this note to Mrs. Foote, and if Moore subsequently settled with Foote on the basis of Foote being entitled to the money, he would do so in his own wrong. But we consider the whole argument far-fetched.    Mr. Foote was in no proper sense his wife's agent in these transactions.    He was one of her debtors; and when he gave this note on behalf of the partnership as a substitute for the due-bill, his wife had a legal right to receive and rely upon it.    If Mr. Foote defrauded his associates in these

transactions, his wife is not responsible. She does not guaranty his good conduct, and she is entitled to all the rights of any other creditor. Had the note been given to any other creditor it would have been collectible, and it is no less collectible in her hands.

The judgment must be affirmed, with costs.

The other Justices concurred.